Beardsley, J.
It does not appear that the defendant has been at all disturbed in the possession and enjoyment of the demised premises. No actual eviction is set up or pretended. But this was not objected on the argument, nor do I see that the point was distinctly taken by the defendant at the trial. I shall therefore assume that the facts relied on constitute an effective bar to the action, unless they are shown to be unavailing for some of the reasons specifically urged by the plaintiff.
It appears by the evidence offered ánd received on the trial, that in December, 1835, the mayor, aldermen and commonalty of the city of New-York presented their petition to the supreme court, in which they stated, among other things, that they deemed it desirable, for the public convenience, to open a part of the Ninth avenue, described in the petition, and that they had accordingly ordered the same to be opened; and they therefore prayed the court to appoint three commissioners of estimate and assessment to perform the duties prescribed by the several acts of the legislature on the subject.
This avenue, as stated in the petition, was laid out under and by virtue of an act passed on the 3d of April, 1807; (Sess. L. of 1807, p. 125;) and the authority of the corporation to open streets and avenues thus laid out, if any such exists, is derived from the “ Act to reduce several laws, relating particularly to the city of New-York, into one act,” and the amendments thereof which have since been made. (2 R. L. of 1813, p. 342; Sess. L. of 1816, p. 77, 113; Sess. L. of 1818, p. 96; Sess. L. of 1839, p. 182.)
The above statutes were intended to form a complete system of law on this subject. I shall not state in detail the various provisions of the system, nor. the changes made in it from time to time, but shall merely glance at its outline.
The act of 1813 provides, “ that whenever and as often as the mayor, aldermen and commonalty of the city of New-York *14 shall he desirous to open” the whole or any particular section or part of an avenue laid out under the act of 1807, 11 it shall he lawful for the said mayor, aldermen and commonalty to cause the same to he opened; and that the lands, tenements and hereditaments “ required for the purpose of opening the same may be taken for that purpose, and compensation and recompense made” therefor in the manner pointed out by subsequent parts of the act. (2 R. L. 408, § 177.) The next section declares that whenever lands are so required to be taken, the mayor, aldermen and commonalty are authorized “ to make application or to cause application to be made to the supreme court of judicature of this state, for the appointment of commissioners; and it shall be lawful for the said court to whom such application shall be made, on any such application, to nominate and appoint three discreet and disinterested persons, being citizens of the United States, commissioners of estimate and assessment, for the purpose of performing the duties &c. in that behalf prescribed.” These commissioners, after taking an oath faithfully to perform their duty, are to view the premises, cause all necessary maps and surveys to be made, and make their estimate and assessment. This is to be an estimate of loss and damage to the owners of the land required to be taken for the street or avenue, and an estimate and assessment of the benefit-and advantage which the opening of such avenue will be to certain lands not required to be taken, but contiguous or adjacent thereto. (Id. 409, § 178.) A copy of the estimate and assessment is to be deposited by the commissioners in the office of the clerk of the city and county of New-York, for examination, at least fourteen days before making the report, of which due notice is to be given. The commissioners are also to give notice in two public newspapers of the city, of the day on which their report will be presented to the court; and any person, whose rights are affected may state to the commissioners his objections, who are required to reconsider their said estimate and assessment, and correct the same, if they shall deem proper so to do. (Id. 417, § 182.) The duty may be performed by the three commis *15 sioners, or any two of them. (Id. 422, § 188.) They are finally to make their report to the court, in which is to be stated the names of the respective owners of the lands mentioned therein, if the same can be ascertained. The lands to be taken, and those deemed to be benefitted, are to be aptly and sufficiently described; and the amount of compensation to be allowed for lands taken, and of benefit and advantage assessed upon the owners of other lands, is also to be specified in the report. (Id. 409, § 178.) On the coming in of the report the court may hear any matters which may be alleged against it, and, may by rule or order confirm the same, or refer it back to the commissioners who made it, or appoint new ones and send it to them for re-examination; and so from time to time, as right and justice -may require, “ until a report shall be made or returned in the premises which the said court shall confirm.” It is then declared that “ such report, when so confirmed by the said court, shall be final and conclusive” upon all persons and parties whatsoever. (Id. 413, § 178.) The amount required to be paid by land adjudged to be benefitted becomes a lien or charge thereon, and may be collected by a summary execution, or by action, and ultimately by a .sale of the land thus charged. (Id. 420, § 186; Sess. L. of 1816, p. 113.)
We aré met in limine by the objection that these statutes, in some of their vital provisions, are in direct violation of the constitution; and that consequently the system provided by them is incapable of being carried into execution. This is urged mainly upon the ground that they assume to confer upon the justices of the supreme court a distinct office, which, under the constitution, they cannot hold; and therefore it is argued that whatever the court may do in appointing commissioners of estimate and assessment, and in confirming their, reports, must be without authority and void.
I cannot admit that these statutes assume to confer any office, new or old upon the members of this court individually. In terms they declare that the court, not the persons who hold it, shall possess and exercise certain powers.; and to me it seems the inquiry should be whether these powers are in their, nature *16 such as the legislature may devolve upon the court, and not whether another office is thus assumed to he conferred upon the justices thereof.
By the present constitution of this state, “ neither the chancellor, nor justices of the supreme court, nor any circuit judge, shall hold any other office or public trust.” (Art. 5, § 7.) The former constitution contained a similar clause, declaring “ that the chancellor and judges of the supreme court shall not, at the same time, hold any other office, excepting that of delegate to the general congress, upon special occasions.” (Art. 25.)
These inhibitions were aimed at the individuals who for the time being might fill the offices referred to, and not at the courts which they were authorized to hold. The person who is chancellor can hold no other office or public trust, and so of justices of the supreme court, and the circuit judges. But this I believe has never been supposed to restrain the legislature so that it could not enlarge the powers of the court of chancery or of the supreme court; nor to impair the capacity of those courts to take and exercise new and enlarged powers. .Certainly such has not been the practical construction of the constitutional provision referred to; for these courts have undergone frequent changes and modifications, by which their powers have in many respects been greatly amplified and extended. By the act to incorporate the Utica and Schenectady Rail-Road Company, the chancellor was authorized to appoint commissioners to appraise lands which might be needed in the construction of the road, who were required to report to the court of chancery ; and it was made the duty of the chancellor to examine their report, hear the parties interested, and increase or diminish the amount awarded, as he might deem just. (Sess. L. of 1833, p. 465, § 7.) Similar powers have repeatedly been conferred upon the circuit judges. (Sess. L. of 1832, p. 417, 502, 517; Sess. L. of 1833, p. 439.) Since the revised statutes, moreover, writs of ad quod damnum may be issued by the court of chancery—a power hot before possessed by that court. (2 R. S. 588.) Those statutes also authorize appeals to be taken to circuit judges from certain decisions of surrogates; (2 R. S. 66, § 55;) and confer upon *17 the supreme court summary jurisdiction over the election of corporation officers in many cases. (1 R. S. 603, § 5; id. 598, §§ 47 to 50.) The supreme court has likewise the right to compel the production and discovery of. books, papers and documents, in cases to which its power did not formerly extend, (2 R. S. 199, § 21,) and may also, on petition, discharge certain persons from imprisonment. (2 R. S. 81, § 1.)
These are cases in which new powers have been conferred upon the court of. chancery, the supreme court, and the circuit judges. The instances might be multiplied by references to an almost unlimited extent; and yet I am not aware that the statutes conferring these powers have ever been regarded as incompatible with the constitution.
I know it has been said that the powers conferred by the New-York statutes relative to the opening of streets, avenues &c., are not exercised by us as a court, but as commissioners. This" form of expression is found in several cases. By an act passed on the 4th of April, 1801, it was provided that when the ground of any person was required by the corporation of the city of Albany, in laying out any street, the damages and recompense sustained by and due to the owner of the ground, should be inquired of and assessed by a jury summoned to appear before the mayor’s court of the city; and that the verdict of such jury, and the judgment of the said mayor’s court thereon, together with the payment of the sum of money so awarded and adjudged to the owner or owners &c., or tender and refusal thereof, should be conclusive and binding. (2 Laws of N. Y. 153, § 13, K. & R.) A case arose under this provision in which the damages were assessed, and judgment of confirmation rendered by the mayor’s court; but subsequently the proceedings were set aside by that court for" irregularity, before any formal record had been made. The effect of this vacatur came before the supreme court, and it was held to be unauthorized. (Stafford v. The Mayor &c. of Albany, 7 Johns. Rep. 541.) Spencer, J., who gave the opinion of the court, observed : “ The authority under which the mayor’s court acted, was specifically derived from the legisla *18 ture, and must be strictly pursued. When, therefore, the assessment was confirmed, the court had no further powers: they were functus officio. (11 East, 200, 201, 202.) There is no analogy between this proceeding and the judicial proceedings of a court of record, in the progress of a cause. The power-granted by the legislature to the mayor’s court in the present instance, may not unaptly be compared to the power given to a court of common pleas to discharge an insolvent from his debts. In both cases, the court act qua commissioners.” In the Matter of Beekman street, (20 Johns. R. 269,) which arose under the act of 1813, relating to streets in the city of New-York, Spencer, then chief justice, again said: “ The powers possessed by this court, in appointing commissioners, in reviewing their report, in referring it back to the same commissioners, or substituting new ones, and in finally confirming their report, are derived wholly from the statute. None of these powers exist independently of the legislative delegation of authority; and they are not incident to our judicial duties. It might be a question how far the legislature can impose such duties on the judges; but it does not admit of a doubt, that if Ave do consent to act, we act under a limited and circumscribed authority; and our only power to act being derived-from the statute, we possess no powers but such as are expressly given; and those powers must be exercised in the manner designated by the act. It is true, we act collectively, and in term time, and a majority present control the proceedings; but we act as commissioners, and in the same way and manner as we used individually to do under the insolvent act. The statute is our guide ; and we must proceed by the rules and in the manner it prescribes. The general powers and jurisdiction of this court, as regards the application now before us, cannot be brought into exercise.” In the Matter of Third street, (6 Cowen, 571,) Savage, Ch. J. observed: “We do not .act as a court in these matters, but as commissioners appointed by the legislature; and such proceedings have been very aptly compared by the cases to those of a commissioner.or court of common pleas under the insolvent act.” Remarks to the like effect, and in much the same terms, have been made in other cases; and proceeding upon the *19 idea that what we do in street cases is done in a limited and subordinate capacity as commissioners, writs of certiorari have been allowed by this court as such, directed to the justices thereof as commissioners, in order to bring theproceedings before the court, and thus obtain its judgment in that capacity, to the end that the judgment might be carried to the court of errors for review. (Patchin v. The Mayor &c. of Brooklyn, 13 Wend. 664; Livingston v. The Mayor &c. of New- York, 8 Wend. 85; Bogert v. The Mayor &c. of New- York, 7 Cowen, 158.)
I do not understand any thing said or done in the decisions on this subject as intended to deny that the power of appointing commissioners of estimate and assessment", and of revising and confirming their proceedings, is strictly judicial in its nature. The cases referred to proceed on the broad distinction between the exercise of general and special judicial powers; between what this court may do in the exercise of its general common law jurisdiction, as the supreme court of the state, and what it may do under a special and limited authority conferred upon it by statute.
The powers in question, as we have seen, have occasionally been compared to those exercised by commissioners under the insolvent laws. But such commissioners, although not clothed with any general judicial authority, are still judges. (Cunningham v. Bucklin, 8 Cowen, 178.) They act as an inferior court of special and limited authority, and their acts may be pleaded as such. (Service v. Hermance, 1 Johns. Rep. 91; Frary v. Dakin, 7 id. 75; Mills v. Martin, 19 id. 34.)
That these powers are strictly judicial may be seen by examining their nature. The corporation of New-York, having determined to open a street or avenue, apply for the appointment of commissioners, of estimate and assessment. These commissioners are but aids to the court, whose judgment is at last to settle the rights and fix the liabilities of the parties. The commissioners are to ascertain the value of the land which may be taken for or affected by the improvement to be made, and determine the amount of damage and benefit which will arise from it. This is to be reported to the *20 court, with all needful explanations, and any person conceiving himself aggrieved may appear and urge his objections to what has been done. If the court is dissatisfied with the report, it may be sent back for" revision again and again, until the court shall be satisfied that it is according to the justice of the case, when judgment of confirmation is to be given. Thus the report becomes in effect the act of the tribunal by which it is confirmed, and the judgment rendered is declared to be an effective lien upon- the lands adjudged to be benefitted. Upon this judgment a summary execution may be issued to collect the amount, or an action may be brought upon it; and finally, it may be enforced by a sale of the land thus charged. If such proceedings are not in the strictest sense judicial, it would be difficult to conceive what acts can be of that character.
Again, that these powers are judicial in their character, is an obvious inference from those cases which hold that the proceedings may be removed by certiorari. (See Patchin v. The Trustees of Brooklyn, 2 Wend. 377, 8 id. 47, S. C. in error; Livingston v. The Mayor &c. of New- York, 8 id. 87; Patchin v. The Mayor &c. of Brooklyn, 13 id. 664; Bogert v. The Mayor &c. of New- York, 7 Cowen, 158.) For it is well settled that a certiorari will only lie to bring up judicial proceedings. (The People v. The Mayor &c. of New- York, 2 Hill, 9.)
I have therefore no hesitation in saying that the powers in question are plainlyjudicial; and this being their character, it follows that they are such as may bé appropriately exercised by us as a court. The right of the legislature to confer upon this court new- judicial powers, which, as originally constituted, it did not possess, is entirely clear, having been practically asserted, as we have seen, in numerous instances, and been recognized indeed ever since the organization of the government. (See Grah. On Juris. 140; 2 R. S. 196, § 1.) In what capacity then do we act when exercising the powers given by the New-York street statutes 1 Have they been confided to us as a court, or did the legislature intend to confer upon us a distinct “ office or public'trust,” viz. that of street commissioners ?
*21 It has already been observed that the statutes declaring these powers devolve them in terms upon the “ supreme court,” making it “lawful-for the said court”—not the justices thereof individually—to perform the duties prescribed. (2 R. L. 409, 411, § 178.) The case of Patchin v. The Trustees of Brooklyn, (2 Wend. 377,) came up by certiorari from the common pleas of Kings county, which court was authorized by statute to exercise powers similar to those conferred upon us by the New-York street statutes; and in giving the opinion of the supreme court, Savage, Ch. J. said: “It has also frequently been held, that the judges act as commissioners; but they in some respects, at least, act as a court during the pendency of the proceedings.” (Id. 384.) The case was subsequently carried to the court of errors, where the chancellor thus expressed himself: “ This is a specially delegated power to the court of common pleas, as such court, and not to the judges as an ex officio duty; and when such a power is committed to a court, all the ordinary powers of such court, so far as they are applicable to the discharge of the particular duty, may be exercised as in ordinary cases. The court may compel the sheriff to return the precept; may impose fines upon the jurors for not attending; may issue process to compel the attendance of witnesses; may award a tales, swear witnesses, and compel them to testify; may appoint triors on a challenge of a juror; and may adjourn the hearing of the cause, upon sufficient cause shown. Thus in England, the jurisdiction of the lord chancellor in bankruptcy is a specially delegated jurisdiction, committed to him as the keeper of the great seal; but in the particular cases in which this jurisdiction is exercised, all the powers of his court become applicable to the discharge of his duty—he issues injunctions and attachments to compel the performance of his orders; makes references to masters to inquire as to facts; awards issues &c. (See Ex parte Cowan, 3 Barn. & Ald. 123.) But no appeal lies from his decisions in bankruptcy, because no law 'has been passed authorizing an appeal in such cases. So in the street causes in the city of New-York, a specially delegated jurisdiction is committed to the supreme court, but I believe it *22 has never been contended that the court was bound to determine cases of this Kind at the first term, and that it had not the power of deciding them at any subsequent term of the court.” (The Trustees of Brooklyn v. Patchin, 8 Wend. 47, 63.) This case was decided in the court of errors in 1831, and in 1834, (Matter of Canal street, 11 Wend. 154, 156,) Savage, Ch. J. thus expressed himself: “ But though the court, in these proceedings, act quasi commissioners, in reviewing and confirming the proceedings below, yet we act also as a court, in many respects, and I think, in all respects, except in reviewing our own decisions. We act as a court in the appointment of the commissioners ; if they misbehave, we may punish them by attachment, as we might referees, in a cause committed to them. If, for any cause, persons appointed as commissioners are shown to be improper, we may, by virtue of the power of appointment, remove them, and appoint others; we are not the mere conduits of conveying authority to the commissioners. They become officers of our court; the proceeding is a proceeding in our court, the effect of which is the transfer of title to real estate to an immense amount; and it would be extraordinaiy, in such a case, that this court should be mere automata. It has been decided that we cannot reconsider our own decisions; but beyond that our power as a court has not been questioned. Our decisions are judgments, which are subject'to review in the court of errors.” And in a late case, (Matter of Mount Morris Square, 2 Hill, 14, 19,) Mr. Justice Cowen said, in reference to these street cases: “ Our award is like that of any inferior magistrate having a limited jurisdiction.”
I fully concur in these views, understanding them as I do to mark the distinction between the different kinds of jurisdiction exercised by this court. Undoubtedly, while discharging the duties imposed upon us by these street statutes, we are exercising powers which do not belong to us as a court of general jurisdiction, but which are derived wholly from the statute; and our proceedings 'are therefore to be treated like those of a court of special and limited jurisdiction. (See Cowen & Hill’s Notes to Phill. Ev. p. 946, and the cases there cited.) We ex *23 ercise powers similar to those usually conferred upon inferior magistrates, hut we do so as a court, and not in any other capacity. No new “ office or public trust” is conferred upon the individual members of the court, but a new judicial duty is prescribed, which the court is required to. discharge. It is readily seen that the same person may, at the same time, hold twq distinct offices, as Lord Hardwicke did for a short period, viz. the offices of chancellor and chief justice of England. But to me the idea is incomprehensible that a court can, at the same time, and in reference to the same subject, act in a double capacity; that is, not only as a court, but in the separate office of commissioners. But if this were possible in the nature of things, I am unable to see how it can occur under the street laws of the city of New-York,.which do not purport to create any new office, but merely require the court to perform a new’ duty. I am therefore of opinion that the constitutional inhibition is wholly inapplicable to the case.
The course of the federal judiciary in relation to an act of congress passed March 23d, 1792, was referred to on the argument for the purpose of maintaining the position that the statute of 1813 assumed to make the justices of this court road commissioners for the city of New-York. (Hayburn's case, 2 Dall. 409, 410, and the note.) But the instances are far from being parallel. The act of congress, as will be seen from the case referred to, was held to confer the appointment of commissioners upon the judges as individuals, and to require them to perform certain duties not of a judicial nature. If I am correct in what has already been advanced, the statute of 1813 devolved nothing upon the justices of this court as individuals, but delegated judicial powers to the court, to be exercised in a judicial way.
It was objected that,- by these proceedings, private property would be taken for public use, without making just compensation, which is forbidden by the constitution. (Art. 7, § 7.) But no property belonging to the plaintiff was taken directly for the use of the public. His land does not even adjoin the avenue to be opened. Upon the assumption that the opening of this avenue would enhance the value of his property, a charge was *24 imposed upon it to pay a part of the expenses thus incurred. This was local taxation for a local purpose, and falls within the legitimate exercise of the taxing power. (Livingston v. The Mayor, &c. of New- York, 8 Wend. 101; Beekman v. The Saratoga & Schenectady Rail-Road Company, 3 Paige, 45.) In towns, individuals are taxed to make and- repair the town highways, and in cities, to grade and pave streets. Each town has its local tax for town expenses, as has also each county to meet county charges. These are all modifications of the taxing power, and- quite as obnoxious to the constitutional objection raised, as is the assessment of lands benefitted by the opening of a street, to meet the charge of such an improvement.
To establish the defence interposed in the present case, it was necessary to show the existence of a valid judgment confirming the report of the commissioners of estimate and assessment ; and for this purpose the party was bound to prove the facts giving the court jurisdiction. Such is the rule applicable to the proceedings of subordinate and limited tribunals, and it applies with equal force to the proceedings of this court when acting in that capacity. (Cowen & Hill's Notes to Phill. Ev. p. 946, 988, 1013; Mills v. Martin, 19 Johns. Rep. 35; Denning v. Corwin, 11 Wend. 647; Galatian v. Cunningham, 8 Cowen, 361, 370.)
For the purpose .of showing jurisdiction, it was necessary to prove, among other things, that the corporation of New-York had decided to open the Ninth avenue, or some part of it, before presenting their petition for the appointment of commissioners. This fact was sufficiently established at the trial, provided the resolution for opening the avenue was properly adopted by the common council. The objection to it is, that it was passed without calling the ayes and noes, and this, it is said, was in violation of the act of April 7th, 1830. (See Sess. L. of 1830, p. 126, § 7.) But I think the provision referred to should be construed as directory merely; the essential requisite being, the determination of the corporation, and not the form or manner of expressing that determination. (Matter of Mount Morris Square, *25 2 Hill, 14, 20; Wiggin v. The Mayor &c. of New- York, 9 Paige, 16, 24.)
The remaining enquiry is, whether the regularity of the sale was sufficiently established. The principles which ordinarily apply to and govern such cases cannot be better stated than they were by Bronson, J. in Sharp v. Speir, (4 Hill, 76, 86.) He there observed: “ Every statute authority, in derogation of the common law, to divest the title of one and transfer it to another, must be strictly pursued, or the title will not pass. This is a mere.naked power in the corporation, and its due execution is not to be made out by intendment: it must be proved. It is not a case for presuming that public officers have done their duty, but what they have in fact done must be shown. The recitals in the conveyance are not evidence against the owners of the property, but the fact recited must be established by proof aliunde. As the statute has not made the conveyance prima facie evidence of the regularity of the proceedings, the fact that they were regular must be proved, and the onus rests on the purchaser. He must show, step by step, that every thing has been done which the statute makes essential to the due execution of the power. It matters not that it may be difficult for the purchaser to comply Avith such a rule. It is his business to collect and preserve all the facts and muniments upon Avhich the validity of his title depends. (Rex v. Croke, Cowp. 26; Williams v. Peyton, 4 Wheat. 77; Rochendorf v. Taylor, 4 Peters, 369; Jackson v. Shepard, 7 Cow. 68; Atkins v. Kinnan, 20 Wend. 241; Thatcher v. Powell, 6 Wheat 119; Jackson v. Esty, 7 Wend. 148; The People v. The Mayor &c. of New-York, 2 Hill, 9; Matter of Mount Morris Square, id. 14.) These cases and those to which they refer will be sufficient to justify all that has been said concerning the necessary requisites for making out a title in the defendant.”
But the application of these principles to the present case is in most respects precluded by a provision in the statute: The lot was sold by the corporation on the 24th of December, 1838, and the purchaser was entitled to his conveyance at the end of two years from that time, A conveyance, called a lease, and *26 dated the 14th of February, 1842, was given in evidence. No objection appears to have been made to the form of the lease, or the proof of its authenticity; and the statute declares that it “ shall be conclusive evidence” of the regularity of the sale. (Sess. L. of 1816, p. 115, § 2.) The lease proved that the collector had made the proper affidavit before the corporation advertiséd, and that eVery thing else was done which the statute' required to constitute a regular sale under the judgment of. confirmation. (See Jackson v. Esty, 7 Wend. 149; Bush v. Davison, 16 id. 553, 4; Peters v. Heasley, 10 Watts’ Rep. 208; Stewart v. Shoenfelt, 13 Ser. & Rawle, 370, 1.)
The statute requires, however, that after the sale, and at a certain period before the expiration of two years from the making thereóf, a notice to redeem shall be published. (Sess. L. of 1816, p. 114, 115, § 2.) The publication of this notice is essential to the perfection and validity of the purchaser’s title, and is not proved by the lease. (Jackson v. Esty, 7 Wend. 148; Bush v. Davison, 16 id. 553.) Evidence aliunde was given at the trial tending to prove the publication of such a notice, and the only objection there raised was, that the notice did not appear to have been published in the state paper. But this objection is entirely obviated by the act of May 14th, 1840, (Sess. L. of ’40, p. 274, § 10,) which renders a publication in that paper unnecessary.
No ground therefore áppears on which the regularity of the sale can be questioned, and so far as this case discloses the facts the purchaser has a valid title. Under the stipulation entered into at the trial I think the defendant is entitled to judgment.
Nelson, Oh. J. concurred.