ACTION of assumpsit with the usual pleas, for the sum of $500, demanded by the plaintiff of the defendant, for entering as a substitute for him into the military service of the United States under the draft of July 12th 1864. By the act of Congress of that date, the defendant was drafted, and being obliged to enter the service, or procure a substitute, by agreement between them the plaintiff entered it as his substitute. And by the act of the Legislature of the State of the 12th of August of the same year, to relieve the people of it from the draft, it was provided that every white person liable to it, who should put in an acceptable substitute in the service for any period not less than one year, and who should be duly credited to the State, should receive from the State the sum of $500, to aid him in procuring a substitute. In the month of September following, the plaintiff was offered by the defendant as his substitute, and was duly accepted and enlisted in the service for a period of three years; and at the time of the transaction in the Provost Marshal's office, the defendant put $300 into the plaintiff's hand, all of which he returned to the defendant with the exception of twenty dollars, and said when he did so, that he knew the man, and that he would pay it back to him when he returned from the army, and if he never came back, he would never ask for it. The regulations of the service required that when a drafted man put in a substitute, he should pay the substitute $300, before he was admitted and mustered into the service. The usual price paid at that time for substitutes for two to three years, was not less that $700, and from that to $1000. The defendant was at the time accompanied by his father-in-law, to whom the plaintiff then was an indentured apprentice under the age of twenty-one years. The plaintiff had long before been very eager to enter the military service, and had once run away from his master for that purpose, but had been apprehended and brought back again, and afterward voluntarily offered to enter as a substitute for the defendant for ten dollars, and it was understood and agreed between the defendant and his father-in-law *Page 432 
when the plaintiff was offered as substitute, that the father-in-law was to have the $500 furnished by the State in such case to aid in procuring a substitute, as a compensation for the services of the plaintiff as his apprentice, which he would lose by his enlistment in the army, and the whole of which he afterward obtained and appropriated to his own uses, the defendant receiving no part of it.
Nields, for the plaintiff. There had been no express or special contract proved between the plaintiff and the defendant, under which the former entered as a substitute for the latter into the military service of the country, in the great and sanguinary struggle through which it had just passed; and there could not be, for the simple reason that there never was any such contract. But if there had been, the plaintiff being at the time a minor, and not having attained in contemplation of law to years of discretion, and the contract being one which the law would certainly consider as prejudicial to his interests, it would be void on his part, and he would not be bound by it, if he chose to repudiate the obligation of it. 2 H. Black.
511. 2 Strange 937. 3 M. S. 477. Batem. on Com.Law, 61. There was, however, an implied promise and contract valid and binding upon the defendant, and which the plaintiff had a clear legal right to enforce at his election, and that was to pay him whatever his services were reasonably worth to the defendant, for the period for which he enlisted as his substitute in the army; and recognizing the justice and equity on which that principle of law rested, he had sued him only for $500, the exact amount of the gratuity and bounty which he received, or might have received, and which another received for him, and in his name, from the State, to be paid by him according to the express letter and purpose of the statute, to the plaintiff for entering the military service of the country as his substitute. He might well, perhaps, under the circumstances, have demanded and sued for much more than that, as the paltry sum of $20, was all he ever received for it, and was all it ever cost the defendant. *Page 433 
 Spruance, for the defendant. It was evident from the testimony that the plaintiff was so eager and impatient to get into the military service, that he was perfectly willing to enter it as a substitute with, or without compensation, and if he had not obtained the consent of his master to enter for the sum of $20, paid him by the defendant as his substitute, he was so resolutely bent upon it, that it was quite certain that he would eventually, and before long have run away again, and entered it without their consent and without any remuneration whatever, unless it had been forced upon him under the regulations governing such enlistments. The arrangement between him and the defendant and Mr. Reynolds, the father-in-law of the defendant and the master of the plaintiff, in pursuance of which he was ultimately gratified in his ardent desire to get into the service, was not in contravention of either the letter, the meaning, or the policy of the statute of the State to relieve the people from the inconvenience and hardships of the draft, as the object of it simply was to pay every white person in it five hundred dollars who would procure a voluntary substitute to take his place, without any reference whatever to the price he was to pay, or the inducements he was to offer him, or whether, indeed, it cost him any thing, or not, to procure such a substitute. Whether the drafted man paid any thing, or not, to obtain the substitute, or the latter received anything or not, for taking his place in the service, was a consideration of no importance whatever in the contemplation of that act; and consequently it was an entirely fair, bona fide, and legitimate transaction between all the parties concerned in it, and constituted a good and valid agreement on the part of each of them. By it the plaintiff obtained the object of his greatest desire, and which was by no means a reproach to him, or necessarily prejudicial to his best and highest interests, for it was an avenue which has led some perhaps, as humble as he, to honor and distinction, who otherwise might have died in poverty and obscurity, whilst the defendant derived no pecuniary benefit from it, or advantage whatever, for every *Page 434 
dollar of the bounty was paid to Mr. Reynolds as an equivalent and a fair recompense for the loss of the plaintiff's services on his farm, which at that time were very valuable, and becoming every day more and more so, from the increasing scarcity of laborers and the rapid advance in wages throughout the whole country, produced by the exigencies of the war itself, and particularly by that very draft which deprived him, much against his wishes, of the services of the plaintiff during the residue of his apprenticeship. And such being the only agreement that was entered into between the plaintiff and defendant in regard to the matter, the full consideration and benefit of which the plaintiff had received and enjoyed, and the contract having been entirely executed and performed by them, it was not in his power now to avoid or ignore it on the ground of his infancy at the time it was entered into, without repaying to the defendant the sums thus expended by him on his account under it; for the law would not allow such injustice to be done, even by a minor. 7 Cow. 179. 15 Mass. 359. 8Taunt. 508. 8 Wend. 84. 11 Wend. 85.
Nields replied.
That under the facts and circumstances proved in the case, for there was no dispute as to the truth of them, the agreement in question and relied upon by the defendant, as his only defense in the action, was not legally binding or obligatory upon the plaintiff because of his infancy and consequent inability in contemplation of law, to make such a contract in such a case and in regard to such a matter, at the time when it was entered into by him; and being still under the age of twenty-one years, he was not only unable as yet to confirm or ratify it, but had here made his election before attaining his majority, to repudiate and avoid it by instituting the present suit through the intervention of a next friend, against the defendant, which he had a perfect legal right to do. The Court was also of the opinion that *Page 435 
the arrangement and agreement between the defendant and his father-in-law, that the latter should receive the $500, to be paid by the State to aid the defendant in procuring the plaintiff as his substitute under the draft spoken of, and that the plaintiff should be paid but twenty dollars by him for becoming his substitute under such draft, was in contravention of the meaning, object and policy of the statute of the State in such case made and provided, and was in both of those respects, a false and fraudulent transaction. The verdict should, therefore, be for the plaintiff, and the true measure of the damages would be the actual value of his services to the defendant, at the time, and for the time, he entered as his substitute under the draft into the military service of the United States. But as the plaintiff had sued only for the sum of $500, and had laid his damages in his declaration at that amount, the jury could not exceed that sum in their estimate of them.
The plaintiff had a verdict for $500.