UNITED STATES *v.* DOHERTY.

*(District Court, S. D. New York.  June 8, 1886.)*

1. STATUTES, CONSTRUCTION OF—DISCRETIONARY POWER.
    Under statutes conferring a general discretionary power without qualification, the exercise of the officer's discretion is limited, by legal construction, to the evident purposes of the act, and to what is known as a sound and legal discretion, excluding all arbitrary, capricious, inquisitorial, and oppressive proceedings.

2. COURTS—JURISDICTION—SPECIAL TRIBUNALS—REVIEW—EXCESS OF POWER.
    Though the acts of special tribunals cannot be in general reviewed, except as provided by law, they may be examined collaterally as respects their jurisdiction, and as regards acts in excess of power; and as to such acts their proceedings will be held unauthorized and void.

3. CUSTOMS DUTIES—APPRAISEMENT—EXAMINATION OF WITNESSES—PENALTY—REV ST. §§ 2922, 2923.
    The defendant had contracted at Lyons, France, with manufacturers there to deliver at his store in New York certain goods, free of all charges, at a certain price in dollars, indicated by certain cipher marks. The manufacturers subsequently imported the goods into the United States, and upon appraisement by the appraiser for the purpose of collecting duties the defendant was examined as a witness, and required to state the price in dollars indicated by the cipher marks, which he declined to do, as prejudicial to his interests. Section 2922 of the Revised Statutes authorizes appraisers to examine on oath any person "touching any matter or thing they may deem material in ascertaining the foreign market value;" and section 2923 imposes a penalty for declining to answer any such interrogatory. There was no evidence of any concealment or fraud in the importation, or of the absence of the ordinary means of ascertaining the market value of the goods in the principal markets of France, which was the only ultimate question for the appraiser's determination. *Held,* that the discretion of appraisers in putting inquiries under section 2922 is not unlimited, but restricted, by the purposes of the act,—by the the limitation of section 2902,—to "reasonable ways and means," and to the exercise of a sound and fair judgment of what was material to the ascertainment of the market value in the principal markets of the country of exportation; that the inquiry as to the contract price for the future delivery of goods at a store in New York, free of all charges, was *prima facie* incompetent, be-

cause too remote and uncertain as evidence of the foreign value, and resort to such evidence was justifiable only upon the failure of the ordinary and appropriate proofs; that to compel such disclosures, without necessity, from a stranger to the importation, when such disclosure would be prejudicial to his business interests, was not within the reasonable ways and means prescribed by the statute, nor the exercise of a sound and reasonable discretion, and was therefore in excess of the appraiser's lawful power, in the absence of special reasons to justify it; and that no penalty, therefore, was legally incurred.

At Law.

*Stephen A. Walker*, U. S. Atty., and *John P. Clarke*, Asst. U. S. Atty., for the Government.

*Seward, Da Costa & Guthrie*, for defendant.

BROWN, J. This suit is brought under section 2923 of the Revised Statutes, to recover of the defendant a penalty of $100, for declining to answer a question asked him by the custom-house appraiser in reference to the price of certain goods which were before the appraiser for appraisement. Upon the trial before the court and a jury a verdict was directed for the plaintiff, subject to the opinion of the court, there being no dispute about the facts. It was admitted that the defendant, who was one of the firm of J. & C. Johnston, of this city, contracted with the manufacturers at Lyons, France, for the delivery of certain goods at the defendant's store in New York, at a price named, free of all charges. The goods in question, designed to fill the defendant's order; were afterwards forwarded and imported into this port by the manufacturers, were entered at the custom-house by their agents, and sent, in regular course, to the appraiser for the appraisement. Upon an examination by the appraiser of Mr. Vietor, one of the manufacturers' agents here, he produced a letter from the manufacturers in which it was stated that the goods in question had been forwarded to be delivered by the agent to J. H. Johnston "at $ H. *x. x.*" Upon Mr. Vietor's stating that he was not at liberty to disclose purchasers' prices, the defendant, who had made the contract in France, was summoned and sworn by the appraiser, and required to state the price in dollars indicated by the cipher "$ H. *x. x.*" The witness objected that the disclosure of the price would be prejudicial to his business interests, and that he was not legally required to answer such a question; and this suit was therefore brought to recover the statutory penalty of $100 for declining to answer.

By section 2902 it is made the duty of the appraisers, "by all reasonable ways and means in their power," to ascertain, estimate, and appraise "the true and actual market value of the merchandise, at the time of exportation, *in the principal markets of the country*" from which the article has been imported into the United States. For that purpose they are authorized by section 2922 to "call before them and examine on oath any owner, importer, consignee, *or other person*, touching *any matter or thing which they may deem material* in ascertaining

the market value or wholesale price of any merchandise imported." By section 2923, if any person so called shall "decline to answer any interrogatories when so required" by the appraiser, he is made liable to a penalty of $100.

Two questions have been argued before the court: *First*, whether the power and discretion vested in the appraisers, under the above statute, to require answers to interrogatories, are unlimited, and not subject to any review or question by the court in an action brought for the penalty; and, *second*, if limited, whether the inquiry in this instance was material.

1. The statute, it will be observed, imposes the penalty "for declining to answer any interrogatory;" not for declining to give the desired information. The witness did not, in this case, decline to make answer to the interrogatory. The two things are not the same. If, in reply to an interrogatory, a witness says that he does not know, and if in fact he does not know, that is of course a sufficient answer, though he does not give the information desired. So the witness, though having the information desired, might be privileged, upon a variety of grounds, from disclosing what he knows. If he states any valid excuse for not giving the information, that is all the answer that the statute requires. This constitutes, therefore, one limitation upon the appraiser's authority. He cannot extort information that the witness is legally privileged from disclosing; and a true answer stating ignorance or a legal privilege is a sufficient answer.

2. The power of the appraiser is further limited by the rule of statutory construction that limits the general words of statutes giving a discretion apparently unlimited, to a legal, reasonable, and just discretion, having reference to the objects of the statute. The very language of this statute, construed with others *in pari materia*, indicates a similar restriction.

The general rule, indeed, applicable to the decisions of courts, or of special officers to whom the determination of any particular matter is committed by law, is that such determinations cannot be attacked collaterally, nor reviewed in any other mode than such as may be provided by law. If there is no mode of review provided, they are final and conclusive. *U. S.* v. *Leng*, 18 Fed. Rep. 15–20; *U. S.* v. *McDowell*, 21 Fed. Rep. 563, 564, and cases there cited. See, also, *Martin* v. *Mott*, 12 Wheat. 19; *Foley* v. *Harrison*, 15 How. 448; *People* v. *Collins*, 19 Wend. 56; *People* v. *Stout*, 11 Abb. Pr. 17. It is upon this principle that the counsel for the plaintiff chiefly rely. To this general rule, however, there are several exceptions as far-reaching as the rule itself. Cases of *habeas corpus* illustrate most frequently both the rule and its exceptions. Though that writ is not suffered to perform the office of a writ of error, the inquiry is nevertheless open whether (1) the committing magistrate or the court had jurisdiction of the person and of the subject-matter; (2) whether the statute is constitutional; (3) whether the proceeding as respects the

particular objected to, was in accordance with or in excess of the statute. In *Ex parte Rowland*, 104 U. S. 604, Chief Justice WAITE, (page 612,) in delivering the opinion of the court, says:

"If the command of the peremptory writ of *manda mus* was in all respects such as the circuit court had jurisdiction to make, the proceedings for the contempt are not reviewable here. But if the command was in whole or in part beyond the power of the court, the writ, or so much as was in excess of jurisdiction, was void, and the court had no right in law to punish for any contempt of its unauthorized requirements. Such is the settled rule of decision in this court." *Ex parte Lange*, 18 Wall. 163; *Ex parte Parks*, 93 U. S. 18; *Ex parte Siebold*, 100 U. S. 371; *Ex parte Virginia*, Id. 339; *Ex parte Wilson*, 114 U. S. 417, 421; S. C. 5 Sup. Ct. Rep. 935.

So, in extradition cases, a person held for extradition upon no competent evidence will be discharged because held in excess of power. But if the record shows some competent evidence of criminality, the officer's determination in that regard is conclusive on *habeas corpus;* and it cannot be set aside on the ground that some incompetent evidence was also received. *In re Joseph Stupp*, 12 Blatchf. 501, 519; *In re Fowler*, 18 Blatchf, 430, 443; S. C. 4 Fed. Rep. 303; *In re Wadge*, 15 Fed. Rep. 864. So an assessment of duties by a collector on a valuation of his own, or a reappraisement by an appraiser who had never seen the goods, or an appraisement made without examination of the goods, or on an erroneous basis as to time, are each in excess of power, and void. *Morlot* v. *Lawrence*, 3 Blatchf. 122; *Wills* v. *Russell*, 1 Holmes, 228; *U. S.* v. *Frazer*, 10 Ben. 347; *U. S.* v. *McDowell*, 21 Fed. Rep. 563; *Ystalifera Iron Co.* v. *Redfield*, 23 Fed. Rep. 650, 651.

The question is therefore one of statutory power or authority, depending upon the construction to be given to the statute. If by the words of section 2922, "touching any matter or thing which they may deem material," the statute intends to confer on the appraiser the power to require answers to all questions that he may choose to ask, whether they be relevant to the subject-matter or wholly irrelevant, then upon refusal to disclose any information in the witness' power, not privileged, the penalty is incurred. But if such is not the intention of the statute, such inquiries are in the eye of the law in excess of the appraiser's power, and no penalty is incurred by refusal to answer.

The subject of discretionary power was among the earliest to which the limitation of the general language of a statute by construction was applied. "*Discretio*," says Lord Coke, (4 Inst. 41,) "*est discernere per legem quid sit justum.*" In *Rooke's Case*, 3 Coke, 99, 100, it is said: "And notwithstanding the words of the commission give authority to the commissioners to do according to their discretions, yet their proceedings ought to be limited and bound with the rule of reason and law;" and this was approved by Lord MANSFIELD and Mr. Justice WILMOT in *Rex* v. *Peters*, 1 Burr. 568–570.

So the discretionary power of adjournment must be exercised rea-

sonably, and not arbitrarily or unjustly; otherwise the proceedings will be set aside on *certiorari*, though, ordinarily, such discretion is not subject to review. *Rose* v. *Stuyvesant*, 8 Johns. 333; *President, etc.*, v. *Patchen*, 8 Wend. 47. In the latter case the chancellor says, (page 64:) "Where palpable injustice has been done in a court of inferior jurisdiction in the exercise of a discretionary power, in opposition to the settled principles of law and equity, their proceedings may be corrected by *certiorari.*" So, in one of the latest decisions on this subject, in the case of *In re Holbrook*, 99 N. Y. 539, S. C. 2 N. E. Rep. 887, in reference to the scope of an examination of assignees authorized under a general statutory power, the court say, (page 545 :)

"The general words are necessarily qualified and limited by the purposes of the act, and the objects thereinbefore stated, as the end of the examination. So construed it is practicably just and reasonably convenient. If the words control, so that not only at any time, but for any and all purposes which a creditor might suggest, an examination of persons and books could be had, there would be palpable injustice and absurdity."

See, also, *Great Western R. Co.* v. *Loomis*, 32 N. Y. 127.

In *U. S.* v. *Kirby*, 7 Wall. 486, the supreme court say, in reference to the construction of statutes :

"General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language which would avoid results of this character. The reason of the law in such cases should prevail over its letter."

These principles and authorities seem to me to be applicable to this case. To extort answers to inquiries that are not relevant to the subject-matter; to compel a disclosure of facts that could not properly be made use of in the appraiser's determination of the foreign value, and which would be prejudicial to the interest of the witness in the competitions of business,—would be not only unreasonable, but unjust, inquisitorial, and oppressive.

A construction of the statute that would authorize such inquiries is not only forbidden by the general rules above cited, but, looking at the language of the act, and at other sections of the Revised Statutes *in pari materia*, it is clear that no such latitude of inquiry is intended. Section 2902 authorizes the appraisers to ascertain the value "by all reasonable ways and means in their power." Section 2922 is in furtherance of that section, and is subject to the general limitation there implied, viz., that only reasonable ways and means be employed. Moreover, the particular language of section 2922, authorizing the appraisers "to examine any person on oath touching any matter or thing which they may deem material in ascertaining the value," necessarily implies that the inquiry be limited, (1) to ascertaining the foreign market value; (2) to what is material to that end; (3) that the appraiser must "deem" the inquiry material. To deem, here, means to judge; to determine upon consideration. The primary meaning of the word (A. S., *deman*) is "to form a judgment," (Stormonth;)

"to conclude upon consideration," (Worcest.) The officer is legally held, therefore, to the exercise of a reasonable judgment, and is limited to reasonable inquiries. These are implied limitations of his power; otherwise the intent of the law would be perverted. Upon the language of the statute, therefore, as well as by the general rules of construction, such inquiries only are within the scope and intent of the statute as upon the exercise of a fair and reasonable judgment are held to be material to the ascertainment of the foreign value. Whatever is beyond that is inquisitorial, oppressive, and in excess of power. And inasmuch as the appraiser himself is not authorized by law to adjudge any penalty, and since the question whether a penalty is incurred or not must be submitted to the court upon an action brought therefor, the court must determine whether, under all the circumstances of the case, the "ways and means" pursued by the appraiser were "reasonable," and whether the question, and the information sought, were "material," or could rightly be made use of within the limits of a reasonable judgment and discretion. Any other construction would not only clothe the appraiser practically with a wholly arbitrary and irresponsible power, but would require the court to enforce penalties upon the mere caprice of the appraiser, however unreasonable and oppressive they might be. If that were the clear intent of the statute, doubtless it must be done. But very explicit evidence of such an intent would be necessary to lead the court to follow that construction. Mere general, unqualified language is not sufficient. That such was certainly not the intent in this case is further evinced from the fact that the imposition of penalties is not left to the appraiser, but is subject to the decision of the court in an independent action, in which the proceeding before the appraiser, and its conformity with the intent of the statute, are necessarily brought in review.

3. There is nothing in the record in this case, or in the correspondence or papers produced in evidence, that shows that the answer desired, namely, the price in dollars at which the manufacturers contracted to deliver certain similar goods at the defendant's store in New York, was in any way material, or could be lawfully considered by the appraiser in ascertaining the foreign value of this importation. Except in cases of fraud or concealment, or in the absence of the ordinary and appropriate means of information as to the foreign value, evidence of this kind, in suits growing out of the alleged undervaluation of goods, where the question to be tried is precisely similar, has been uniformly held to be incompetent. The evidence in this case shows that the goods in question were still the goods of the foreign manufacturers. They were imported into this country by them; the goods had not been delivered; they were sold to the defendant's firm under an executory contract; and they had not been accepted by the witness, or even examined. In the *Sherry Wine Cases,* 2 Ben. 250, where this point was raised, BLATCHFORD, J., in a careful charge,

instructed the jury that unless the price named in New York was adopted for the purpose of concealing the real foreign price, it must be disregarded, because "it had nothing to do with the case." Similar evidence was excluded in the *Champagne Cases*, 1 Ben. 244.

Upon the trial of the present case the appraiser was called as a witness. He did not even testify that he deemed an answer to this inquiry to be material to the appraisement. There was no allegation of concealment; no proof or suggestion of any inability to ascertain the foreign value in the ordinary ways. It was admitted that there was no element of fraud in the case, and nothing exceptional in the circumstances is intimated. It does not in any way appear how much or how little other evidence the appraiser may have had as to the market value in the principal markets of France. The value there, not here, was the question, and the only question, for his ultimate decision. Where no reasons appear, such as concealment or fraud, or the absence of the ordinary appropriate proofs, that would render the contract price of delivery in New York competent, I cannot regard the inquiry as a reasonable one, or within the limits of the appraiser's authority. There are many elements that enter into an agreement made in a foreign country for the delivery of goods at a future time in New York, at a New York price, that make the New York price no criterion of the market value "in the principal markets" of a foreign country at the time of exportation. By making various allowances and deductions, as for interest, for freight, for differences of time, changes of circumstances, and possible fluctuations in the market prices, some approximation, doubtless, to the presumptive foreign market value at the time of exportation might be arrived at. But that is resorting to very roundabout and uncertain methods, which are neither reasonable nor justifiable except upon the failure of proper means of inquiry. It is for these reasons that such evidence is ordinarily legally incompetent. It is rejected by the courts, not upon any formal or technical grounds, but because of its irrelevancy, remoteness, and uncertainty; and the same objections are as applicable upon an appraisement as upon a judicial trial. In either case there must be proof of special circumstances to make it reasonable and competent; and there was no such proof here. The very fact that there is no review of the appraiser's determinations of value in the courts makes it all the more obligatory that that valuation should not be arrived at by unreasonable or unjustifiable methods, nor based upon remote and incompetent evidence, when appropriate evidence is available. Doubtless the appraiser is not bound by all the legal rules as to the admissibility of evidence in courts. All mere technical rules may be disregarded by him. But the statute, in requiring that the matters inquired of shall be "material," and material in ascertaining the foreign value, and in leaving the question of this materiality to the appraiser, binds him to a considerate judgment upon the propriety of the ques-

tions asked; that is, to a judgment based upon the substantial and fundamental rules of law as respects the reasonableness and competency of the inquiry, excluding all technicalities. These essential rules clearly exclude such an inquiry as that under consideration, except under exceptional circumstances, which are not proved, and of which nothing in the evidence in this case furnishes any indication. To hold the question asked in this case to be within the appraiser's power under such circumstances would be to hold, in effect, that the appraiser might at his arbitrary discretion, and without reason, abandon all the direct and ordinary proofs of foreign value, and substitute therefor remote, uncertain, and legally incompetent proofs, through inquiries prejudicial to the interests of a witness who has no concern in the appraisement. I cannot sustain this view.

The limitation upon the appraiser's discretion above indicated cannot work any practical embarrassment in the performance of his duties, nor afford any protection to witnesses that refuse to answer any reasonable inquiries. The special circumstances that make necessary and justify the resort to inquiries ordinarily incompetent can always be shown upon the trial, whenever such circumstances exist. If such circumstances do not exist, such inquiries are not justifiable, and cannot serve as the foundation of a suit for penalties.

The question asked in this case being presumptively unwarranted by law, and beyond the scope of the appraiser's lawful inquiry, it was for the plaintiff to prove the exceptional circumstances, if any, that made it competent; and that was not done. On this ground, therefore, and following the rule laid down by BLATCHFORD, J., in the *Sherry Wine Cases, supra,* judgment will be directed for the defendant.