ZELLERBACH PAPER CO. (HOYT, SHEPSTON & SCIARONI) *v.* UNITED STATES

**No. 4603.**—Invoices dated Nebra, Germany, October 31, 1935, etc.
   Certified November 4, 1935, etc.
   Entered at San Francisco, Calif., December 13, 1935, etc.
   Entry No. 6560, etc.

(Decided June 14, 1939)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the plaintiffs.
*Webster J. Oliver*, Assistant Attorney General (*Daniel G. McGrath* and *Daniel I. Auster*, special attorneys), for the defendant.

BROWN, Judge: In this reappraisement tried at San Francisco an attack is made upon the appraised value of certain matrix board on the ground that the thickness upon which gradations of value were based was wrongly measured or wrongly applied.

Secondly, as to the black matrix board it is claimed that the sales were made only to the importer here and therefore no home market value existed and no export value existed and so-called United States value must be used, the amount of which is claimed to be 17 cents per sheet; after the statutory deductions are made from this it produces the unusual result of a dutiable United States value less than the foreign value.

Thirdly, it is claimed that items of inland freight are included in arriving at dutiable value which are not dutiable items, and that the prices of the merchandise sold in the home market include the packing.

Taking up the contentions in their order, some evidence is produced tending to show that a mistake may have been made in measuring the thickness, which tended to increase the value found on the matrix board.

On this a close question of conflict may be considered to be presented. However, the evidence is neither conclusive nor certain enough to be convincing and, therefore, we hold with the Government on that point.

Secondly, as to the black matrix board, Congress never intended that we should depart from the foreign value in the country of export on slight grounds so as easily to get away from real values when the undisputed purchase price of the importation, negotiated after dickering, readily appears.

Congress' policy for more than a hundred years has been to levy ad valorem duty on the price of sales in the foreign market with the purchase price to the American importer as the first and primary factor in the equation.

The alternative values called United States value and cost of production were only intended to be resorted to as a desperate dernier resort when everything else completely failed.

They both consist of constructive rather than actual values with perfectly arbitrary statutory deductions in the former and similarly

arbitrary statutory additions in the latter, to arrive at a mere approximation of foreign-market value for want of any way otherwise to derive foreign-market value from sales in the market place.

United States value and cost of production as thus more or less arbitrarily calculated were never intended as substantive values to cover large classes of importations taxed with ad valorem duty, but mere alternatives to be rarely used in very exceptional cases to keep the process of levying ad valorem duty from completely failing in such cases.

As a matter of fact, it is well known that in 99 out of every 100 importations of purchased goods taxed with ad valorem duty the levy is made by the administrative officials on the basis of the purchase price.

It is only in exceptional cases where they have received information that the importer has purchased under the foreign market, or the market conditions themselves are exceptional or peculiar, that an advance to make market value is made resulting, perhaps, in a reappraisement appeal before this court.

If we are going to assume that the separation of foreign-market value into home-consumption value and export value, to be applied whichever was higher in the acts of 1922 and 1930, inserted for the purpose of attaining more duty without raising rates, also, by some strange process of reasoning, exalted these alternative arbitrary, constructive, artificial values into substantive values by applying them to large classes of importations, through construing every sale, or series of sales, to one importer in America to be a closed market, we will go far to revolutionize the ad valorem system, much further than Congress had any intention of going, and place a further brake upon foreign trade.

In *United States* v. *Doherty*, 27 Fed. 730, Judge Addison Brown, of the New York District Court, refused to punish a witness who had been haled before the court because he refused to answer a question concerning the foreign value of certain merchandise. The question actually was the price in the United States to be calculated back to the foreign market.

Judge Brown held that had no relation to the foreign value and dismissed the witness.

He used the following language:

3. There is nothing in the record in this case, or in the correspondence or papers produced in evidence, that shows that the answer desired, namely, the price in dollars at which the manufacturers contracted to deliver certain similar goods at the defendant's store in New York, was in any way material, or could be lawfully considered by the appraiser in ascertaining the foreign value of this importation. Except in cases of fraud or concealment, or in the absence of the ordinary and appropriate means of information as to the foreign value, evidence of this kind, in suits growing out of the alleged undervaluation of goods, where the question

to be tried is precisely similar, has been uniformly held to be incompetent. The evidence in this case shows that the goods in question were still the goods of the foreign manufacturers. They were imported into this country by them; the goods had not been delivered; they were sold to the defendant's firm under an executory contract; and they had not been accepted by the witness, or even examined. In the Sherry Wine Cases, 2 Ben. 250, where the point was raised, Blatchford, J., in a careful charge, instructed the jury that unless the price named in New York was adopted for the purpose of concealing the real foreign price, it must be disregarded, because "it had nothing to do with the case." Similar evidence was excluded in the Champagne Cases, 1 Ben. 244.

\* \* \* \* \* \* \*

There are many elements that enter into an agreement made in a foreign country for the delivery of goods at a future time in New York, at a New York price, that make the New York price no criterion of the market value "in the principal markets" of a foreign country at the time of exportation. By making various allowances and deductions, as for interest, for freight, for differences of time, changes of circumstances, and possible fluctuations in the market prices, some approximation, doubtless, to the presumptive foreign market value at the time of exportation might be arrived at. But that is resorting to very round-about and uncertain methods, which are neither reasonable nor justifiable, except upon the failure of proper means of inquiry. It is for these reasons that such evidence is ordinarily legally incompetent. It is rejected by the courts, not upon any formal or technical grounds, but because of its irrelevancy, remoteness, and uncertainty; and the same objections are as applicable upon an appraisement as upon a judicial trial.

This is all just as true now as when Judge Addison Brown said it in 1886 and illustrates well the inaccuracy and indefiniteness of statutory United States value which with the arbitrary statutory deductions can never do more than approximate foreign value including export value in the country of exportation.

The historical evolution of these alternate constructive substitutes for foreign valuation should not be overlooked. When Congress defined them in detail for such emergency use it should not be presumed to have intended to expand and amplify their use so as to make the substitute become the original, and thus bring about by construction a departure from foreign valuation in large classes of importations. It is common knowledge that in practice they are not only arbitrary, uncertain, and difficult to apply, but, nine times out of ten, they produce a higher customs value than does foreign value, whether it is separated into home consumption value and export value or not. Of course, if the purpose of such construction is to hamper foreign trade, and to make customs value on reappraisement increasingly difficult to prove, that is one thing. Congress expressed no such purpose in framing the present value definitions and no such purpose should be implied.

As we read the special agent's report no closed market is shown, but instead, negotiated sales to a single importer who buys after negotiation which should be controlling. Therefore, in our view, the

*per se* appraised value, which is the foreign value, should stand for all the matrix board whatever the color.

However, the special agent's report shows plainly that the inland freight is deducted from the price and the packing is included in the price.

Therefore, all the matrix board is hereby appraised at the local appraiser's *per se* findings packed, less inland freight wherever invoiced, less 3 per centum discount.

The local appraiser's addition of packing seems plainly erroneous.

Judgment will issue accordingly.