**UNITED STATES v. SCHAUTZ et al., and three other cases.**

Nos. 3679-C–3682-C.

District Court, D. New Jersey.

May 22, 1946.

Edgar H. Rossbach, U. S. Atty., and Vincent E. Hull, Asst. U. S. Atty., both of Newark, N. J., and Joseph J. Cella, Jr., of Washington, D. C., for the United States.

Milton, McNulty & Augelli and Thomas McNulty, all of Jersey City, N. J., for Walter L. Schautz.

Weinberger & Weinberger and Joseph J. Weinberger, all of Passaic, N. J., for Stephen F. Schmidt.

Linton M. Collins, of Washington, D. C., and Guggenheimer & Untermyer and Harry Hoffman, all of New York City, for Samuel Paris.

MEANEY, District Judge.

Four indictments were returned by the United States Grand Jury for the District of New Jersey against the above named defendants, three of the indictments charging

violations of the Second War Powers Act, 50 U.S.C.A.Appendix, § 631 et seq., and the fourth charging a conspiracy to defraud and commit offenses, 18 U.S.C.A. § 88. Defendants Paris and Schmidt are named in all indictments. Defendant Schautz is named in the conspiracy indictment and in one of the indictments charging a substantive offense. Defendant Milstein is also named in the conspiracy indictment and in one substantive indictment.

The three substantive indictments Nos. 3680-c, 3681-c, 3682-c charge in various counts three types of offenses, viz: (1) unlawfully and contrary to a restriction of the War Production Board commercially using nylon hosiery; (2) accepting delivery of nylon unlawfully and contrary to a restriction of the War Production Board; and (3) wilfully delivering nylon yarn without authorization by the War Production Board.

The orders mentioned in the indictment allegedly prohibiting these activities are General Conservation Order M—356, which provides in its pertinent part as follows:

(b) (1) "No person shall sell or deliver nylon except as specifically authorized in writing by the War Production Board."

(b) (2) "No person shall knowingly purchase, accept delivery or commercially use nylon contrary to any restriction of the War Production Board."
and General Limitation Order L—274, which in part reads as follows:

(c) (1) "On and after May 15, 1943, no person shall put into production women's full-fashioned plain-knit hosiery, women's seamless, circular-knit hosiery, men's hosiery, or misses', children's or infants' hosiery except in accordance with Schedules A, B, C, and D, which are a part of this order, or in paragraphs (c) (2), (c) (3), and (c) (4)."

The fourth indictment charges these defendants with conspiracy involving alleged commercial use of and acceptance of delivery of nylon contrary to restrictions of the War Production Board and delivery of nylon without specific authorization of said Board.

Of the 19 counts in the substantive indictments 11 charge commercial use contrary to a restriction, 3 charge acceptance of delivery contrary to a restriction, and 5 charge delivery without specific authorization.

In the oral arguments directed to this motion and in the briefs filed in support thereof, each indictment was considered and discussed separately. In this opinion the court will consider the substantive indictments together, and the conspiracy indictment separately.

Indictment No. 3682—C containing only one count, charges that defendants Paris, Schmidt and Milstein: "did wilfully, knowingly and unlawfully, and contrary to a restriction of the War Production Board, commercially use three cases containing three cartons and five bags of nylon hosiery amounting to five hundred and thirty-nine (539) dozen pairs, to wit, did take and transport the same from the City of Paterson aforesaid to the Borough of Manhattan, in the County, City and State of New York, for delivery to the Manhattan Storage and Warehouse Company, with intent and for the purpose of selling and disposing of the same to dealers and the public; * * *."

This indictment the defendants attack on the ground that the language of M—356 which directs that "no person shall knowingly * * * commercially use nylon contrary to any restriction of the War Production Board" is so vague and indefinite that it does not give notice of the acts intended to be prohibited, and is therefore unenforceable and invalid. Moreover, the defendants urge, even if the phrase "commercial use" were defined or capable of definition, it is not all "commercial use" which is prohibited, but only such "commercial use" as may be contrary to a restriction of the War Production Board. This restriction, the government insists, is found in General Limitation Order L—274 (supra).

Indictment No. 3681-C is in eight counts. The first three counts, of which count one is representative, charge that defendants Paris and Schmidt: "did knowingly, wilfully and unlawfully and contrary to a restriction of the War Production Board, accept delivery of one hundred (100) dozen

pairs of nylon hosiery from the Eagle Rock Knitting Mills, Inc. * * *"

The last five counts of this indictment charge that on various dates the defendants Paris and Schmidt: "did knowingly, wilfully and unlawfully and contrary to a restriction of the War Production Board commercially use * * *" various quantities of nylon hosiery. The specific acts claimed to constitute commercial use contrary to a restriction of the War Production Board are set forth in the counts as follows:

Count Four charges that the defendants: "did deliver * * * the said two cartons of nylon yarn for the purpose of having the same knitted into hosiery for sale and disposal to dealers and the public. * * *"

Counts Five and Six charge that the defendants: "did possess and hold (certain nylon yarn) in storage * * * for the purpose of using the same in the production of nylon hosiery for sale to dealers and the public. * * *"

Count Seven charges that the defendants: "did possess (certain nylon yarn) deposited with the Made-Rite Hosiery Company for the purpose of having the same knitted into nylon hosiery for sale and disposal to dealers and the public. * * *"

Count Eight charges that the defendants: "did possess (certain nylon hosiery) deposited with the Made-Rite Hosiery Company for the purpose of having the same knitted into nylon hosiery for sale or disposal to dealers and the public for the account and on order of (the defendants). * * *"

Defendants address essentially the same arguments to the counts of this indictment as were made to the first indictment, with the added objection that nowhere in any restriction is there prohibited "acceptance of delivery".

Indictment No. 3680-C contains ten counts of which the first two are typical.

Count One alleges that on a certain date the defendants Schautz, Paris and Schmidt: "did knowingly, wilfully and unlawfully and contrary to a restriction of the war production board, commercially use about one hundred (100) pounds of nylon yarn, to wit, did ship and deliver from the Grove Silk Company at Scranton, Pennsylvania, to Paterson, New Jersey, by means of the Arrow Carriers Corporation, a common carrier of goods, consigned to Desmond's Terminal, Paterson, New Jersey, about one hundred (100) pounds of nylon yarn to be used in the knitting, dyeing and finishing of nylon hosiery for sale to dealers and the public. * * *"

Count Two charges that on the same date at Paterson, New Jersey, the defendants: "did knowingly, wilfully and unlawfully deliver one hundred (100) pounds of nylon yarn from the Grove Silk Company at Scranton, Pennsylvania, to Paterson, New Jersey, by means of Arrow Carriers Corporation, a common carrier of goods consigned to Desmonds' Terminal, Paterson, New Jersey, they the said (defendants) not being nor was any or either of them specifically authorized in writing by the said Board so to do. * * *"

The odd numbered counts, of which Count 1 is typical, fall within the arguments earlier noted with regard to "commercial use". The even numbered counts of this indictment, of which Count 2 is typical, are attacked by defendants on the ground that the power granted the board to authorize selling or delivery was arbitrary and subject to no objective tests and is, therefore, invalid.

While the object of the regulations and the aim of the restrictions may very well have been to restrict all use of nylon and nylon products to the specific limitations contended for by the government, something more than a declaration of intent is required on the part of the War Production Board before violations of the law may properly be charged. The regulations must be set forth with such specificity and clarity as to indicate that which is permissible, at least by categoric definition of that which is prohibited. The government contends that a reading of the indictments as a whole, would indicate that the gravamen of the charge so far as indictments 3682-C, 3681-C and counts 1, 3, 5, 7 and 9 of indictment 3680-C are concerned is the violation of General Order M—356 by the doing of acts within the prohibition of Gen-

eral Limitation Order L—274. Insofar as the material portions of the General Conservation and Limitation orders above referred to are concerned, there is need to consider that part of General Conservation Order M—356(b) (2) which forbids any person from knowingly purchasing, accepting delivery or commercially using nylon contrary to any restriction of the War Production Board and General Limitation Order L—274(c) (1) which prohibits any person from putting into production certain types of hosiery therein set forth.

Objection is made to the all inclusive term "commercial use" as being of such indefinite extent and such uncertain application as to make it impossible for anyone to determine the nature of the acts intended to be comprehended in their scope. Whatever vice might be contained in the use of so general a term need not, however, be considered at this time; for giving the counts of the indictment whatever force might be accorded them if they alleged violations of General Limitation Order L—274 nominatim in the charging part of the indictment, there would still be a patent defect in that the acts complained of were taking and transporting of nylon hosiery (indictment 3682-C), acceptance of delivery of nylon hosiery contrary to a restriction (counts 1, 2, and 3 of indictment 3681-C), delivery, possessing and holding in storage, and possession of nylon yarn and hosiery (counts 4, 5, 6, 7 and 8 of Indictment 3681-C) and shipping and delivering of nylon yarn (counts 1, 3, 5, 7 and 9 of indictment 3680-C) while the Restriction set up in General Limitation Order L—274 prohibits only "putting into production". To attempt to identify "taking and transporting", "acceptance of delivery", "delivering", "possessing and holding in storage", "possession" and "shipping and delivering" with "putting into production" would constitute a perversion of the patent meaning of the words.

If it were the purpose of the restriction to forbid these acts, it would have been as simple to set them forth in the limitation order as detailedly as they were set forth in the indictment. No need then to itemize the ideas of the framers of the indictment

as to the meaning of "putting into production" or "commercial use".

In view of the foregoing, indictments number 3682-C, 3681-C and counts 1, 3, 5, 7 and 9 of indictment number 3680 are herewith dismissed.

As to the remaining counts of indictment number 3680-C charging violation of the regulation controlling delivery of nylon without specific authorization in writing by the War Production Board, the situation is different. General Conservation Order M—356 as amended reads in applicable part, as follows: Sec. 3290.326(b) (1) "No person shall sell or deliver nylon except as specifically authorized in writing by the War Production Board." The language of this provision is incapable of misapprehension. A definite, easily understood prohibition is set forth and the wording of the indictment insofar as it refers to violations of this regulation, apprises the accused clearly of the nature of the charge made against them.

The defendants assert that under the case of United States v. L. Cohen Grocery Co., 255 U.S. 81, 41 S.Ct. 298, 65 L. Ed. 516, 14 A.L.R. 1045, the regulation must be held invalid, because no rules, guides or standards are provided which should govern the War Production Board in granting or denying authorization and that hence no one could know what representations to make to the Board to obtain authorization. This is as the court conceives it, an entirely different matter from a situation wherein one would not know with any degree of certainty what was prohibited—the gravamen of the objection to the regulation in the Cohen case supra. In the instant case, there can be no uncertainty as to what is forbidden. And though the power granted may be great, that is no warrant for an assumption that its use will be arbitrary. The regulation does not clash with the ban against Congress delegating its peculiar functions, for by no construction could issuance or non-issuance of authorizations or licenses be considered legislating. In the empowering act, Congress properly delegated vast authority to the Board, not in violation of any constitu-

tional provisions, but completely within their circumscriptions, and this in order to implement the right of the nation to control the national economy for national defense and the preservation of the country.

■ In the General Conservation Order presently under discussion, the Board is given very broad and far reaching power to grant benefits or to withhold them. It is a general discretionary power without qualification, to be exercised to meet contingencies as they may arise. Needless to say the exercise of the discretion granted therein is limited to the purposes of the delegation, and to a "sound and legal discretion, excluding all arbitrary, capricious, inquisitorial, and oppressive proceedings." United States v. Doherty, D.C., 27 F. 730. Action inconsistent with this declaration, and otherwise performed, would be subject to redress in the Courts.

■ One defendant in his motion addressed to the indictment contests the jurisdiction of the Court, asserting that though the indictment alleges the delivery in New Jersey, it further states that delivery was made by the use of the services of a Common Carrier to whom the goods actually were handed over in the State of Pennsylvania and therefore the forbidden act, if such there was, was done in Pennsylvania and not in the jurisdiction of this Court. If this were true, the validity of these counts of the indictment would depend on the significance of the term "delivery". If delivery means transfer of title, these counts of the indictment would in such case fall. But delivery in its ordinary sense and as used herein means transfer of possession to the ultimate intended receiver, and not merely to an agency used for transmission to such ultimate intended receiver. It may be contended that this is too liberal a construction of a criminal charge. However, there still remains the indubitable fact that the indictment charges "That on or about (a certain date) in the City of Paterson, in the County of Passaic, and the State and District of New Jersey, and within the jurisdiction of this Court, (the defendants Schautz, Paris and Schmidt) did knowingly, wilfully and unlawfully deliver (nylon or nylon yarn) * * *," nothing in the

terminology of the indictments indicating that the defendants did not so deliver as charged, whatever the proofs at trial may indicate. On this motion, no evidence aliunde the indictment may be considered.

There remains for consideration, indictment Number 3679-C which charges defendants Schautz, Paris, Schmidt and Milstein with the crime of conspiracy.

This indictment, in one count, charges that the defendants:

"did knowingly, wilfully, unlawfully and feloniously conspire to commit offenses against the United States, that is to say:

"(a) Offenses of selling, purchasing, delivery, acceptance of delivery of nylon, and the commercial use of the same without being specifically authorized in writing so to do by the said Board and contrary to restriction of the War Production Board, and

"(b) To defraud the United States in its governmental function of honestly and fairly conserving nylon for the defense of the United States. * * *"

Defendants direct the same arguments to this indictment and allege the same infirmities as were directed against the substantive indictments.

The determination of the Court insofar as the substantive indictments are concerned is dispositive of these arguments directed against the conspiracy indictment.

Insofar as the indictment charges a conspiracy to commit the offenses of selling or delivery of nylon without being specifically authorized in writing so to do by the War Production Board, the court finds the indictment to be sufficient. The remainder of the allegations of the indictment suffer the same infirmities as those noted heretofore in regard to the substantive counts and as to the remaining portions of indictment 3679-C, the defendants' motions to dismiss are granted.

In addition to the arguments previously raised, the defendants address the further argument against the conspiracy indictment, that there is no crime charged, in that while there is a charge of "wilful conspiracy" to commit offenses, there is no such allegation of wilfulness as to the of-

fenses alleged to have been the object of the conspiracy.

It is the opinion of the Court that the elements of the offenses are alleged sufficiently to apprise the defendants fully of the crimes with which they are charged. The Court finds no merit in the further arguments urged upon it by the defendants in opposition to this indictment.

An order in accordance with the views expressed above may be entered.